# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOAN EHLMAN, <br><br> Plaintiff, <br><br> v. <br><br> UPLIFT, INC.; EQUIFAX INFORMATION SERVICES, LLC, <br><br> Defendants. | Case No. 2:20-cv-01387-AMM |

### EQUIFAX INFORMATION SERVICES LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS OR ALTERNATIVELY MOTION FOR STAY PENDING ARBITRATION

Equifax Information Services LLC ("Equifax") respectfully requests that the Court enter judgment in its favor pursuant to Federal Rule of Civil Procedure 12(c). As detailed below, the claims asserted by Plaintiff concern a contractual dispute that the Fair Credit Reporting Act ("FCRA") was not designed to resolve. This is the classic case of a consumer attempting to raise a collateral attack on the legal validity of her debt. And this lawsuit is not the proper vehicle by which to raise the attack. Alternatively, the Court should stay this matter pending Plaintiff's arbitration with Defendant Uplift, Inc. (the "Arbitration"). Otherwise, the Court runs the risk of duplicative and even inconsistent rulings.

### INTRODUCTION

This case centers around the legal operation of a loan (the "Loan") provided by Defendant Uplift, Inc. ("Uplift") to Plaintiff to finance a cruise from Carnival Cruise Lines ("Carnival"). Almost immediately, Plaintiff paid off the Loan but then, two months later, she reversed (*i.e.*, charged back) the payments that had previously satisfied the Loan upon learning that Carnival had cancelled the cruise. Under the terms of the Loan from Uplift, Plaintiff agreed not to charge back

payments while a refund was pending. Unwilling to wait, Plaintiff did reverse the payments. Consistent with the Loan, Uplift took the position that Plaintiff's prior payments did not occur and therefore reinstated the Loan, entitling Uplift to the previously due monthly payments and interest. Plaintiff disagreed. Then, when Carnival returned the refund to Uplift months later, it applied those funds towards Plaintiff's balance, but it was not enough to cover the accrued interest. Consequently, Uplift maintained that Plaintiff, by operation of the Loan documents, owed an outstanding balance that was past due. Again, Plaintiff disagreed.

To challenge Uplift's interpretation of the Loan documents, Plaintiff submitted a single dispute to Equifax in July 2020, and Equifax notified Uplift of the dispute. After Uplift verified the Loan and its delinquent status, Equifax issued its reinvestigation results in August 2020, notifying Plaintiff that Uplift had verified the 120-days delinquency with a past-due balance of $308. Dissatisfied by this, Plaintiff sued Equifax, alleging that it violated FCRA for this purported misreporting. But this suit is improper precisely because it seeks to demand that Equifax resolve a legal dispute Plaintiff has with Uplift. FCRA, however, imposes no obligation on Equifax to interpret the Loan documents in a manner that satisfies Plaintiff. Consequently, her Complaint against Equifax should be dismissed with prejudice.

Alternatively, this lawsuit should be stayed. In addition to disagreeing with Uplift's interpretation of the Loan documents, Plaintiff overlooked that she was obligated to arbitrate her dispute with Uplift. Therefore, faced with Uplift's motion to compel arbitration, Plaintiff had no other choice but to dismiss Uplift from this lawsuit and proceed with the Arbitration. For Plaintiff to prevail on her claims against Equifax, she must prove, as a threshold matter, that the Uplift information that Equifax reported about her was factually inaccurate.

The accuracy of that information is, in the first instance, a question to be resolved between Plaintiff and Uplift. And that precise question will be at the center of—and will be resolved by—the Arbitration. Staying this case against Equifax while the critical parties resolve the threshold accuracy issue among themselves would advance judicial economy, preserve the parties' resources, avoid duplication of efforts or inconsistent results, and promote the interests of justice. Additionally, the limited duration of the requested stay (only during the pendency of the Arbitration) would ensure that the stay would not impose an undue hardship on Plaintiff. Consequently, to the extent the Court declines granting judgment on the pleadings in favor of Equifax, a stay is the appropriate alternative.

## FACTUAL BACKGROUND[1]

On January 14, 2020, Plaintiff financed a Carnival cruise through a $2,935.84 loan (the "Loan") serviced and eventually owned by Uplift. Compl., ECF No. 1 at ¶ 9. In taking out the Loan, Plaintiff agreed to a Borrower Agreement and Promissory Note (the "Agreement"). *See* ECF No. 14-1 at 2, 23–35.[2] Under the terms of this Loan, Plaintiff agreed to make monthly payments starting in February 2020 and, in the event of a cancellation of the cruise, remain responsible for the payments until the Loan was fully paid through a Carnival refund:

> In the event that a refund is granted by the person or entity from which my purchase was made, and said refund is credit to Uplift or CBW Bank, this refund will be treated in the same manner as a loan payment. . . . Should any refund received by CBW Bank or Uplift

---

[1] The "facts" as alleged in the Complaint are taken as true only for purposes of this motion. Equifax does not admit the truth of such allegations by referring to them here. Additionally, a Rule 12(c) motion for judgment on the pleadings is treated the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). As a consequence, the court may consider the pleadings, documents attached to the pleadings, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018).

[2] As noted in footnote 1, the Court may consider the Agreement because the Complaint refers to it and the Agreement is central to Plaintiff's claim.

>
> not pay Borrower's loan in full, Borrower *will continue to be responsible* for scheduled loan payments until Borrower's Loan is *paid in full*.

*Id.* at 30 (emphasis added).

In addition, Plaintiff agreed not to charge back[3] any payments from Uplift should a dispute arise between her and Carnival:

> Except as otherwise provided in this Note, CBW Bank and Uplift are not responsible or liable to me for the quality, safety, legality, or any other aspect of any property or services purchased with the proceeds of my loan. If I have a dispute with any person or entity from whom I have purchased such property or services, I agree to *settle the dispute directly* with that person or entity.

*Id.* at 29 (emphasis added).

By April 2020, the cruise was cancelled but not before Plaintiff had made two loan payments to satisfy the Loan in February 2020. Compl., ECF No. 1 at ¶¶ 10–12. Unwilling to wait for a refund from Carnival and after Uplift notified Plaintiff that it would not return her money until Carnival issued a refund, Plaintiff instead requested that her bank charge back the payments she had made to Uplift. *Id.* at ¶¶ 13–17. Taking the position that this violated the Loan terms, Uplift reinstated the Loan as if the original payments were never made and requested $3,244.00 and "six months of accrued interest." *Id.* at ¶ 17. As a result, Plaintiff became delinquent under the Loan. *Id.* By the time Uplift received the Carnival refund of $2,935.84 in June 2020, Plaintiff owed $308.24 in interest, which Uplift reported to Equifax. *Id.* at ¶¶ 18–21. Also reporting was the fact that she was 120 days late on her Uplift account. *Id.* at ¶ 22. And so in July 2020, she sent a dispute to Equifax, which responded in August 2020 to verify Uplift's reporting of the account: that she had a past-due balance and she was 120 days late. *Id.* at ¶¶ 23–26.

---

[3] "Chargebacks arise when a cardholder makes a return for credit, or disputes a charge, and the issuing bank reverses the transaction." *See FrontStream Payments, Inc. v. Edwards*, No. 8:15CV273, 2016 WL 7443246, at *1 (D. Neb. Aug. 1, 2016).

Plaintiff complains that, by verifying Uplift's reporting, Equifax violated sections 1681e(b) and 1681i of FCRA: the former because Equifax apparently did not establish or follow reasonable procedures to assure maximum possible accuracy in preparation of Plaintiff's credit report and file; and the latter because Equifax allegedly did not conduct an appropriate reinvestigation of Plaintiff's July 2020 dispute. *Id.* at ¶¶ 33–36. She claims that these violations caused her loss of credit, the loss of the ability to obtain credit, and emotional distress and that the violations were negligent and willful, entitling her to damages, attorney's fees and costs, and punitive damages. *Id.* at ¶¶ 37–39.

## **LEGAL STANDARD**

### I.     **Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Because the standards for Rule 12(c) are the same for Rule 12(b)(6), *see supra* note 1, principles for a motion to dismiss for failure to state a claim apply. Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when a plaintiff's allegations fail to set forth facts which, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The pleadings must raise the right to relief beyond the speculative level, and a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a motion to dismiss, the Supreme Court instructed lower courts to consider "[t]wo working principles." *Iqbal*, 556 U.S. at 678. First, the court is not required to accept, as true, legal conclusions couched as factual allegations. *Id.* Second, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). "But where the well-

pleaded facts do not merit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' . . . 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

In analyzing a Rule 12(b)(6) motion, the court should accept all well-pleaded facts in the Complaint as true and draw all inferences in the plaintiff's favor. *Craft v. Olszewski*, 428 F. App'x 919, 921 (11th Cir. 2011). However, the "duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for the plaintiff." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (internal quotations omitted). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Indeed, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive a motion to dismiss." *Iqbal*, 556 U.S. at 678.

## II.     Motion for Stay

Courts have the inherent power to stay proceedings, "incident[] to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *accord Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) (citations omitted). When a stay is entered pending the resolution of related proceedings, the stay may not be "immoderate." *Ortega Trujillo*, 221 F.3d at 1264. Whether a stay is "immoderate" requires an examination of "both the scope of the stay (including its potential duration) and the reasons cited by the district court for the stay." *Id.* (citation omitted).

Further, the Federal Arbitration Act[4] requires courts to stay litigation in deference to arbitration upon finding that issues involved in the litigation are subject to an arbitration provision:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3. While courts generally do not stay nonarbitrable claims where the litigation is feasible, "[c]rucial to this determination is whether arbitrable claims predominate or *whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision*." *Klay v. All Defendants*, 389 F.3d 1191, 1203–04 (11th Cir. 2004) (emphasis added) (citation omitted). Where the result would not be "duplicative proceedings" and where the decision in one proceeding would not have a "preclusive effect" on the other, denying a motion for stay pending arbitration is not an abuse of discretion. *Id.*; *cf. Branch v. Ottinger*, 477 Fed. App'x 718, 721–22 (11th Cir. 2012) (citing *Klay* and noting that because the arbitrable claims were independent of the nonarbitrable claims, there was no abuse of discretion to deny motion for stay).

## ARGUMENT & CITATION TO AUTHORITY

Judgment on the pleadings in favor of Equifax is appropriate because Plaintiff alleges a legal question, not a factual inaccuracy. Through this lawsuit, Plaintiff seeks to impose liability on Equifax for not agreeing with her legal interpretation of the Loan. But FCRA imposes no duty on Equifax to decide on the legal application of a chargeback and its effect on the Loan. In the

---

[4] Plaintiff's Agreement with Uplift mandates the application of the Federal Arbitration Act. *See* ECF No. 14-1 at 28 ("This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the FAA.").

end, there is no factual inaccuracy at issue, and this case boils down to an impermissible collateral attack on the legal validity of Plaintiff's debt owed to Uplift.

Alternatively, the Court should grant Equifax's motion for stay pending the Arbitration. The claims here and in the Arbitration centrally depend on whether the information reported about Plaintiff's Uplift account was accurate, whether and to what extent Plaintiff suffered damages, and whether the allegedly inaccurate reporting resulted in unfavorable credit decisions.  Therefore, it would be duplicative and would raise serious risks of inconsistent findings should this case proceed parallel to the Arbitration.

**I.   Plaintiff Pleads a Legal Question, Not a Factual Inaccuracy**

To succeed on either a § 1681e(b) and § 1681i claim, Plaintiff must establish a factual inaccuracy. *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156, 1160 (11th Cir. 1991) (noting that for reasonable-procedure claims, "a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information"; and for reinvestigation claims, a consumer must adduce "a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry"); *Kuehling v. Trans Union, LLC*, 137 F. App'x 904, 908 (7th Cir. 2005) ("Without evidence of some inaccuracy in the Trans Union report or reinvestigation, Kuehling cannot establish that Trans Union violated the FCRA – either § 1681e(b) or § 1681i(a)(1)(A)); *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000) ("In order to make out a prima facie violation under § 1681e(b) a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."); *Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688, 698 (N.D. Ga. 2012) ("The Eleventh Circuit has held that the text of § 1681e(b) *implicitly* requires that a consumer must present evidence tending to show that a [CRA] prepared a report containing 'inaccurate information' in order to sustain a claim.")

(internal quotation marks and citation omitted) (emphasis in original).  Plaintiff falls woefully short of this threshold.  And "[a]ccurate reporting is a complete defense to both a 1681e(b) claim and a 1681i claim."  *Batterman v. BR Carroll Glenridge, LLC*, No. 1:19-CV-1598-CC-RDC, 2020 WL 1821322, at *5 (N.D. Ga. Apr. 10, 2020) (internal quotation marks and citations omitted), *aff'd*, 829 Fed. App'x 478 (11th Cir. 2020).

Plaintiff asserts that Equifax's reporting is inaccurate because she paid off the Loan and that the chargeback granted no right to Uplift to reinstate the Loan and declare a deficiency.  In other words, her claim is not that Equifax reported any incorrect <u>factual</u> information about her Uplift account, but rather Equifax failed to adopt Plaintiff's interpretation of the Loan documents, such as the Agreement, and Plaintiff's <u>legal position</u> concerning the accounting effect of the chargeback.  Plaintiff's claim is meritless because it is inconsistent with case law in this and other circuits, which stands for the proposition that credit reporting agencies, like Equifax, are not required or equipped to decide legal issues. It is well settled that only factual inaccuracies, not legal issues, can give rise to liability under the FCRA.  *Batterman*, 829 Fed. App'x at 481–82 ("The report of the liquidated damages is not a factual inaccuracy; rather, it is a contractual dispute.  Such contractual disputes require resolution by a court of law, not a credit reporting agency. . . . Accordingly, . . . we affirm the district court's order granting the Appellees' motion for judgment on the pleadings."); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015) ("A reasonable reinvestigation, however, does not require CRAs to resolve legal disputes about the validity of the underlying debts they report."); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010) (explaining credit bureaus are "not tribunals" and that "courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims."); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir.

2008) ("This is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency . . . is neither qualified nor obligated to resolve under the FCRA."); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008) ("Claims brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not a party to the suit . . . .").

In *Batterman*, for example, the appellant disputed Equifax's reporting of $2,816 in liquidated damages owed to his prior landlord. 829 Fed. App'x at 479. Under his lease, the appellant had the right to terminate the lease if the property became uninhabitable. *Id.* After experiencing flooding, the appellant terminated the lease, and while the landlord acknowledged the termination, it took the position that the appellant still owed liquidated damages for the early termination. *Id.* After the appellant failed to pay these damages, the landlord and its collection agency reported the delinquency to Equifax. *Id.* When Equifax did not remove the reporting after reinvestigating the appellant's disputes, he sued Equifax for violating the FCRA. *Id.* at 479–80. On a motion for judgment on the pleadings, the lower court ruled in favor of Equifax because the appellant had failed to allege a factual inaccuracy. *Id.* at 480. On appeal, the Eleventh Circuit affirmed, agreeing with the lower court that the reporting of the liquidated damages was not a factual inaccuracy but rather a contractual dispute that FCRA was designed not to resolve. *Id.* at 481–82. It was simply insufficient as a matter of law to proceed with the lawsuit hinged on Equifax's failure "to accept his interpretation that he lawfully terminated the lease due to its uninhabitability. . . . [Equifax] could not have addressed issues related to the amount of the debt until the legal issues surrounding the lease were resolved first." *Id.* at 481.

Similarly, here, a court first must first resolve the legal ramifications of the Plaintiff's chargeback and its effect on the Loan prior to any FCRA challenge. How to interpret the Loan

documents, such as the Agreement, is not a responsibility borne by Equifax. Because the root of her claims against Equifax is that it did not accept her interpretation of the Agreement after a chargeback, Plaintiff's claims fail as a matter of law. As Uplift has argued before this Court, the chargeback rendered the Loan in default, and, while Plaintiff may disagree with this position, that dispute is not factual. *See* Uplift's Motion to Dismiss, or in the Alternative, Motion to Compel Arbitration, ECF No. 14. Just as the *Batterman* court would not force Equifax to decide between the appellant's interpretation of the lease and the landlord's, so too should this Court decline to require Equifax to decide between two interpretations of the Agreement. That decision is a contractual one for a court to decide. Accordingly, this Court should grant Equifax's motion for judgment on the pleadings.

## II.     Alternatively, the Court Should Stay this Litigation Pending the Arbitration

Even assuming the Plaintiff has pled a factual inaccuracy, this lawsuit should be stayed to promote judicial economy and avoid the risk of inconsistent results. Indeed, the viability of Plaintiff's claims against Equifax turns on whether the information the Uplift furnished to Equifax was accurate. And, as identified earlier, inaccuracy is a threshold matter for a FCRA claim. *See, e.g.*, *Batterman*, 2020 WL 1821322, at *5 ("Accurate reporting is a complete defense to both a 1681e(b) claim and a 1681i claim."), *aff'd*, 829 Fed. App'x 478 (11th Cir. 2020). Consequently, because the nonarbitrable claims here will depend upon the arbitrator's decision, a stay is appropriate to avoid duplication and any preclusive effect. *Accord Klay*, 389 F.3d at 1203–04.

Indeed, the Arbitration is the best forum for determining whether there is an inaccuracy of Plaintiff's Uplift account information—not a separate, parallel proceeding against Equifax in this Court. As contracting parties to the relevant accounts, Plaintiff and Uplift are best positioned to determine whether Plaintiff's Uplift account was reporting accurately. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009) ("[A]s the statute recognizes, the furnisher

of credit information stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation."); *Gauci v. Citi Mortg.*, No. 2:11-CV-01387-ODW(JEMx), 2012 WL 1535654, at *6 (C.D. Cal. Apr. 30, 2012) (holding when a consumer challenges the validity and accuracy of a credit account, proper recourse is to resolve the dispute with the furnisher).

The information, after all, originated with Uplift (which furnished it to Equifax), and Uplift has access to proof regarding the accuracy of the information, which it will present in the Arbitration. If this case continued to proceed against Equifax concurrently with the Arbitration, Uplift would doubtless be called on to produce the information—documents and testimony—in its possession. This would be duplicative and wasteful given the pendency of the Arbitration.

Plus, the Arbitrator may reach a different conclusion than this Court about whether the disputed information was accurate. The possibility of confusing and inconsistent results is a concern for all parties. Should this proceeding against Equifax continue while the Arbitration is pending, Uplift's reporting could simultaneously be found accurate in one action but not the other. These and other potential sources of confusion and inconsistency should be avoided by staying the claims against Equifax in this proceeding until after completion of the Arbitration.

Furthermore, imposing a stay here is not immoderate. *See Landis*, 299 U.S. at 256; *Ortega Trujillo*, 221 F.3d at 1264. Rather, it will extend only until the resolution of the Arbitration, and to the extent there are any outstanding issues to resolve, the litigation can resume and the parties will be in no worse position than if the stay had been denied. Moreover, allowing a brief stay will not result in any hardship to Plaintiff; in fact, Plaintiff will be spared the burden and expense of duplicating her efforts in both the Arbitration and this action. A stay pending resolution of the Arbitration will allow Plaintiff and Uplift to resolve the underlying issues regarding their

agreement(s) and will facilitate a more efficient resolution of Plaintiff's claims against Equifax, to the extent those claims remain after the resolution of the Arbitration. In summary, efficiency, judicial economy, and the interests of justice all favor staying this case while the Arbitration proceeds.

## CONCLUSION

Plaintiff has failed to tender a factual inaccuracy for this case to move forward. Instead, her gripe regarding the application of the Loan in response to the chargeback sounds in contract. The FCRA is clear that Equifax cannot be tasked with deciding the interpretation of a contract. As a consequence, the Court should grant the motion for judgment on the pleadings. In the alternative, the resolution of the case depends on the outcome of the Arbitration, particularly whether Uplift furnished any inaccurate information to Equifax. How the arbitrator weighs the decision may dispose of this lawsuit. Therefore, to avoid judicial waste and the risk of inconsistent results, the Court should stay this matter until the resolution of the Arbitration.

DATED:  February 22, 2021

Respectfully submitted,

MAYNARD COOPER & GALE

By: */s/ Brock Phillips*
W. Brock Phillips
bphillips@maynardcooper.com
Maynard Cooper & Gale
1901 Sixth Avenue North
Regions Harbert Plaza
Suite 1700
Birmingham, AL 35203
Telephone:     (205) 254-1981

*Counsel for Equifax Information Services LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 22, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

>*/s/ Brock Phillips*
>OF COUNSEL